UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Complainant : | |
| : | |
| v. : | Case No. 1:21-CR-725 (RDM) |
| : | |
| JARED SAMUEL KASTNER, : | |
| : | |
| Defendant. : | |
| : | |
| _____: | |

**DEFENDANT JARED SAMUEL KASTNER's MOTION IN LIMINE TO EXCLUDE FALSIFIED PHOTOGRAPH CREATED FOR LITIGATION**

Defendant JARED SAMUEL KASTNER ("Kastner"), by and through undersigned counsel, hereby respectfully moves the Court to enter an order in *limine* to exclude from the proceedings at trial testimony, derivative evidence, references to or argument upon a falsified, inadmissible, unauthenticated photograph misrepresenting alleged restricted grounds.

**I.   GOVERNING LAW**

   **A.   <u>Federal Rules of Evidence Rule 403:  Prejudicial or Confusing to Jury</u>**

While the Federal Rules of Evidence are a seemingly self-contained set of rules, it is not often remarked that they exist of course within the context of the constitutional mandate to provide litigants and especially criminal defendants with a fair trial consistent with constitutional due process.  Here, the risk of confusing and misleading by ambiguity or lack of clarity the jury and possibly encouraging the jury to reach an unbridled lawless verdict may seriously encroach into the territory of denying due process.  While it is a necessary balance between the right of party presentation against the Rules of Evidence and guardrails of admissible evidence, the constitutional due process right to a fair trial is also in the mix.

Also, where some rules of evidence might be waived by consent, Defendant hereby provides demand and notice early ahead of trial that he objects to and rejects the following improper matters and makes clear that he does not waive or agree to their inclusion in the trial.

Federal Rules of Evidence, Rule 403, provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> **NOTES OF ADVISORY COMMITTEE ON PROPOSED RULES** [1]
>
> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.
>
> Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.
>
> The rule does not enumerate surprise as a ground for exclusion, in this respect following Wigmore's view of the common law. 6 Wigmore §1849. Cf. McCormick §152, p. 320, n. 29, listing unfair surprise as a ground for exclusion but stating that it is usually "coupled with the danger of prejudice and confusion of issues." While Uniform Rule 45 incorporates surprise as a ground and is followed in Kansas Code of Civil Procedure §60–445, surprise is not included in California Evidence Code §352 or New Jersey Rule 4, though both the latter otherwise substantially embody Uniform Rule 45. While it can scarcely

---

[1] Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/rules/fre/rule_403

be doubted that claims of unfair surprise may still be justified despite procedural requirements of notice and instrumentalities of discovery, the granting of a continuance is a more appropriate remedy than exclusion of the evidence. Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. VI. Extrinsic Policies Affecting Admissibility), Cal. Law Revision Comm'n, Rep., Rec. & Studies, 612 (1964). Moreover, the impact of a rule excluding evidence on the ground of surprise would be difficult to estimate.

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. See Rule 106 [now 105] and Advisory Committee's Note thereunder. The availability of other means of proof may also be an appropriate factor.

## II.     MOTION IN LIMINE TO EXCLUDE FALSIFIED PHOTOGRAPH

The Government has systematically attempted to rely on the following altered photograph to make it appear that the USCP defined a "restricted area" within the meaning of 18 U.S.C. 1752 effective on January 6, 2021.  This photograph has been falsified.



3

There was of course never any red line painted on the ground around the U.S. Capitol on or about January 6, 2021. The photograph has been falsified, doctored, or altered by a computer generated red line being added much like the space ships in movies like <u>Star Wars</u>.

Captain Tia Summers of the U.S. Capitol Police (USCP) specifically testified in cross-examination on July 11, 2023, in the case of *United States v. David Lesperance, et al.*, Case No 1:21-cr-575 (JDB). Captain Summers specifically testified that this photograph (being mis-used as evidence) was actually created for the purposes of litigation. That is, no such photograph existed on January 6, 2021, but it was fabricated later for use in these prosecutions. As an artifice created for litigation purposes, it is not evidence and cannot be used as evidence.

Furthermore, if one may attempt to understand this photograph despite its uncurable defects it is clear that it is not a photograph of January 6, 2021. There appear to be parked cars in the photograph – but no people. That is, there are no crowds visible. This is not a photograph showing events or images of January 6, 2021.

The underlying photograph apparently purports to be an aerial photograph viewing the top of the U.S. Capitol dome from above, such as from the view of a bird, an airplane, or satellite in orbit. But the admissibility and/or authentication of a photograph would require either the live, in-court testimony of the person who took the photograph or someone familiar with the view shown in the photograph. No one has been identified who is familiar with flying above the U.S. Capitol and viewing it from the air. The photograph cannot be authenticated or admissible.

### III.    NOT VALID AS A DEMONSTRATIVE EXHIBIT

Neither can the photograph be used as a demonstrative exhibit.

Demonstrative evidence is designed to "organize or aid the jury's examination of testimony or documents ***which are themselves admitted into evidence***." *U.S. v. Bray*, 139 F.3d

1104, 1111 (6th Cir. 1998) (referring to such evidence as "pedagogical devices.") *(emphasis added)*. This includes things such as diagrams, timelines, animations, summaries of already-admitted documents or testimony, and charts. *Id.*

But the Government does not lay a foundation by admissible testimony or documents of a restricted area or restricted grounds whose contours may be better understood by the altered photograph. On the contrary, the Government offers the doctored photograph *instead of* establishing the existence and dimensions of a restricted area, not in aid of understanding other reliable, admissible evidence. The photograph is not based upon sound evidence, but a dodge for not submitting that underlying evidence. To use the photograph as a demonstrative exhibit, first the Government would have to establish the metes and bounds of the area supposedly restricted.

Demonstrative evidence should be admitted if it is a reasonably accurate representation of the evidence it is based on, and its probity is not substantially outweighed by undue prejudice. *U.S. v. Taylor*, 210 F.3d 311, 315-16 (5th Cir. 2000) ("[a] necessary precondition to the admission of documents is that they accurately reflect the underlying records or testimony, particularly when they are based, in part, on … factual assumptions"); *Burchfield v. CSX Transportation, Inc.*, 636 F.3d 1330, 1337 (11th Cir. 2011) ("experimental or demonstrative evidence, like any evidence offered at trial, should be excluded `if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."); *Bray*, 139 F.3d at 1111; *Milkiewicz*, 470 F.3d at 399-400; *See, e.g., Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 (9th Cir. 1981).

The jury can view demonstrative evidence at trial, *but the demonstrative exhibits will not be available to the jury in deliberations and often come with a limiting instruction on their use*. *See id. U.S. v, Milkiewicz*, 470 F.3d 390, 397, 398-399 (1st Cir. 2006); *U.S. v. Taylor*, 210

5

F.3d 311, 315 (5th Cir. 2000); *U.S. v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013); *Rogers v. Raymark Indus*, 922 F.2d 1426, 1432 (9th Cir. 1991); *U.S. v. Stiger*, 413 F.3d 1185, 1198 (10th Cir, 2005); *Robinson v. Mo. Pac. R. Co.*, 16 F.3d 1083, 1088 (10th Cir. 1994). *But see, e.g., Bray*, 139 F.3d at 1112 (demonstratives might be admitted into evidence if they are "so accurate and reliable *a summary or extrapolation of testimonial or other evidence in the case* as to reliably assist the factfinder….") *(emphasis added)*; *Milkiewicz*, 470 F.3d at 398.

## IV. RED LINE IS INACCURATE – CROSSES ROADS

A careful examination of the red line added to the photograph shows that at the bottom (apparently Southern end) the false red line is drawn such that part of a road crosses onto the other side of the red line. That is, not only does the red line extend beyond several paths, but parked cars are visible. These are not footpaths, but roads traveled by vehicles.

Clearly, no restricted area on January 6, 2021, extended across the road to the other side of the road to the South. The photograph is not merely defective as to authentication or foundation but plainly false. The red line added as special effects is not where any restricted grounds was actually designated in fact. The positioning of the red line does not correspond to any restricted area (restricted grounds or building) declared around the U.S. Capitol on January 6, 2021. Again, the parked cars indicate the difference between foot paths and roads.

## V. PHOTOGRAPH CANNOT BE AUTHENTICATED

Furthermore, this is a bird's eye photograph of the Capitol from above, to which a red line has been digitally (by computer) added artificially. There is no actual photograph of a red line painted on the ground. No red line was ever painted on the ground as the photograph purports to depict.

Because it is an altered photograph, that does not represent the real-world view of the

Capitol, the photograph and any similar photographs should be excluded from evidence at trial. It would be unduly prejudicial and would confuse the jury.

Furthermore, it is difficult to envision how the photograph or similar photographs would be authenticated and sponsored into evidence. Someone would either have to testify "I took the photograph flying above the Capitol" or "I am familiar with the view from above the Capitol and this is a fair representation of looking down on the Capitol from high above the ground." Certainly no pigeon or other bird who took the photograph has been called to testify.

### VI. PHOTOGRAPH IS IRRELEVANT – IT WAS NEVER POSTED OR VISIBLE AT THE U.S. CAPITOL GROUNDS OR BUILDING

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of the bird's eye view photograph of the Capitol above or any similar photographs unless the Government can prove that such photograph was prominently posted on the U.S. Capitol Grounds or at entrances to the Grounds or around the Capitol building. (It was not. It was not visible to any of the crowds.)

The fact that no one in the public had access to this photograph with the added red line before January 6, 2021, and no one had any notice of its purported contents renders it of no legal value and no probative value. It would be prejudicial and confusing to the jury to refer to or show a photograph purporting to show were an area was restricted without the jury understanding that no one actually saw that photograph or anything like it visible on January 6, 2021, at or near the U.S. Capitol.

The U.S. Capitol Grounds were not in fact restricted within the meaning of 18 U.S.C. § 1752 if no legally-effective notice was given to those accused of violating said restriction.

18 U.S.C. § 1752 is really not an anti-trespassing statute. It involves the presence of a Secret Service protectee.

Notice that under 18 U.S.C. § 1752 how an area could be restricted one day, say on a Tuesday, but not restricted on the following day, say on Wednesday. It is not the area that is restricted but area around the immediate path of the Secret Service protectee.

A Secret Service liaison officer or site agent assigned to the Vice President "E.G." also testified in cross-examination on July 11, 2023, in the case of *United States v. David Lesperance, et al.*, Case No 1:21-cr-575 (JDB). Secret Service site agent E.G. was very clear that the size and contours of a restricted area are determined by the Secret Services expectations for where, when, and how the Secret Service protectee will be and will travel. When asked about a protectee attending a sporting event, for example, E.G. was very clear that the actual pathway of the protectee would govern what area is restricted (although lower-level safeguards would apply to attendees showing their other-wise-required tickets and the Secret Service setting up magnetometers). [2]

Finally, Defendant Kastner like hundreds of other demonstrators at the Capitol on January 6, 2021 – though curiously not left-wing or anarchist demonstrators who assaulted the Trump White House in May to June 2020 in a violent riot nor those who invaded the Hart Senate Office Building and the Senate Judiciary Committee to prevent the confirmation of Brett Kavanaugh to the U.S. Supreme Court from taking place – are charged with violating 18 U.S.C. § 1752.

However, 18 U.S.C. § 1752 only applies to a restricted area concerning a Secret Service protectee. A building closed for any other reason would not support a prosecution under 18

---

[2] Curiously, arrangements on January 6, 2021, did not meet the standards that E.G. testified to. The purportedly restricted area was not as she testified limited to the locations where the Vice President was expected to be and to travel. However, E.g. testified that the restricted area cannot be larger than necessary nor mis-shapen in relation to the Secret Service protectees planned location and movements, per her testimony.

U.S.C. § 1752.  The statute does not criminalize entering a building or grounds closed due to COVID-19.  Entering a closed government building might violate some other statute, but not 18 U.S.C. § 1752.  Viewing violence does not violate 18 U.S.C. § 1752.  Hearing an alarm is not a violation of 18 U.S.C. § 1752.  Seeing police officers is not a violation of 18 U.S.C. § 1752.  Only a entering a properly and legally-established restricted area concerning the current or imminent presence of a protectee can support a charge under 18 U.S.C. § 1752.

For example, if the region's 2011 earthquake that damaged the spires of the National Cathedral in Washington, D.C. had triggered the temporary closing of the U.S. Capitol, it could not be a violation of 18 U.S.C. § 1752 for a person to nevertheless enter the building.  If the Capitol building or some portion of it were closed for fumigation or painting or repairs, there would be no violation of 18 U.S.C. § 1752 for someone entering the building though closed.  Again, perhaps there is some other law that might apply, but not a charge under 18 U.S.C. § 1752.

As a result, the doctored photograph is objectionable, inadmissible, and also entirely irrelevant.

**VII.   RESTRICTED AREA MUST BE FIXED IN LOCATION**

The problem appears to be that the USCP, much less the Secret Service, never specified a supposedly restricted area, but merely put up bike racks to mark a restricted area.  But those bike racks are movable and even a single strong man can move one alone.  Thus, once the bike racks were moved, the restricted area was undefined.  If the definition of the restricted grounds is merely where the bike racks were placed, but those bike racks can be moved, then there is no legally effective designation of restricted grounds under 18 U.S.C. § 1752.  An area that is not fixed in place cannot be a restricted area.  This appears to be the reason that the Government

cannot substantiate a demonstrative exhibit with underlying evidence of the legal contours.

### VIII.  CONCLUSION

If the Government wishes to establish that the presence and planned movements of a Secret Service protectee created a restricted area (grounds or building) on January 6, 2021, the Government must use actual evidence to establish this beyond a reasonable doubt.  The falsified photograph created purely for litigation cannot be a substitute for actual evidence, not even as a demonstrative exhibit.  A demonstrative exhibit summarizes what is already in evidence.

July 16, 2023                                              **RESPECTFULLY SUBMITTED,**

John M. Pierce, Esq.
*Counsel for Defendant*

　　　　　　*/s/ John Pierce*

JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

### CERTIFICATE OF SERVICE

I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

MATTHEW M. GRAVES
United States Attorney

Cytheria Jernigan
U.S. Attorney's Office
300 Fannin Street Suite 3201
Shreveport, LA 71101
318-676-3611
318-676-3663 (fax)
cytheria.jernigan@usdoj.gov

Will Widman
DOJ-CRM
1301 New York Avenue NW

Washington, DC 20530
(202) 353-8611
will.widman@usdoj.gov

Stephen F. Brennwald
BRENNWALD & ROBERTSON, LLP
922 Pennsylvania Avenue, SE
Washington, DC 20003
(301) 928-7727
(202) 544-7626 (fax)
sfbrennwald@cs.com
Attorney for Kenneth Duncan Massie

Kira Anne West
LAW OFFICE OF KIRA WEST
712 H St, NE
Unit 509
Washington, DC 20002
(202) 236-2042
kiraannewest@gmail.com
Attorney for Luke Faulkner

                          */s/*
                   John M. Pierce